IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RODERICK KEITH JOHNSON, | § | |
| TDCJ-CID NO. 1455959, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-2728 |
| | § | |
| JOHN DOE, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Roderick Keith Johnson, an inmate of the Texas Department of Criminal Justice (TDCJ), filed a civil rights action under 42 U.S.C. § 1983 claiming that TDCJ officials violated his constitutional rights. Defendants TDCJ Executive Director Brad Livingston, TDCJ-CID Director Rick Thaler, Senior Warden Robert Herrera, and TDCJ Health Services Division Director Dr. Lannette Linthicum, have filed a Motion for Summary Judgment (Docket Entry No. 42) supported by records and affidavits.[1]  The defendants' motion will be granted for the reasons explained below.

## I.   Background and Procedural History

Johnson, a self-declared homosexual, was incarcerated at the TDCJ Alred Unit during the early 2000's where he filed a section

---

[1]The Motion for Summary Judgment and the supporting records and affidavits were filed under seal because Johnson's confidential medical records were included.  See Docket Entry No. 41. References to the records shall be cited as "App. ___."

1983 suit alleging that he had been a "prison sex slave" and that officials there had refused to protect him from assaults by other inmates. Johnson v. Wathen, Civil No. 7:02cv0087 (N.D. Tex. 2005). He was paroled in 2005 shortly before his federal trial in Wichita Falls in which the jury found for the defendants and all of Johnson's claims were dismissed.

Johnson was returned to TDCJ pursuant to a new robbery conviction for which he received a nineteen-year prison sentence. See Docket Entry No. 25-1 (Johnson's Offender Commitment Data Sheet). Johnson again complained that he was being victimized and TDCJ responded by transferring Johnson to the New Mexico Corrections Department (NMCD) via an interstate compact agreement on October 30, 2007. See Correspondence from NMCD, dated June 17, 2011, App. 2-3.

The correspondence from NMCD states that its Security Threat Intelligence Unit received information that Johnson was engaging in sexual activities and was "selling" himself in the NMCD prison system, which in turn produced tensions between White and Hispanic inmate groups within that system. Id. On May 20, 2011, Johnson and a New Mexico inmate named Perez were moved involuntarily to segregation because of reports that they were going to be assaulted because of their relationship. On May 27, 2011, Johnson reported that Perez had sexually assaulted him. When questioned about the alleged assault, Perez stated that Johnson had assaulted him. The investigating officers concluded that none of the charges could be

sustained.   It was found that Johnson had engaged in sexual activities with both white and Hispanic inmates, which created tensions between the groups as well as enemies for Johnson.   The NMCD transferred Johnson to other facilities four times based on the enemies that he had made.   When the NMCD had "run out" of facilities to house Johnson, the NMCD requested that TDCJ take him back.   Id.  Johnson was returned from New Mexico on August 8, 2011. (App. 140)   He was subsequently assigned to the Pack I Unit where he is now housed in protective custody.   Johnson filed an Application for a Temporary Restraining Order in the earlier action in the Northern District of Texas.   (No. 7:02cv0087)   The Northern District Court severed the new filing from the earlier, closed action, and transferred it to the Southern District of Texas because the Pack I Unit is located here.   The defendants now move to dismiss or for summary judgment.

## II.   Johnson's Claims and Allegations

Johnson claims that the defendants have violated his rights by:

A.   Housing him in isolated custody;

B.   Denying him treatment for his serious medical and psychiatric needs;

C.   Failing to protect him from serious harm; and

D.   Retaliating against him for filing grievances.

## A.   Conditions - Isolated Housing

Johnson alleges that he was placed in solitary confinement upon his return from the New Mexico prison system.   (Docket Entry

No. 4, p. 4)   Although he admits that he is at risk of being attacked if he is placed in general population, he contends that the conditions are punitive because he is locked in a closet-like cell for 23 hours each day where there is no human interaction other than occasional brief exchanges with guards.  Johnson asserts that his isolated condition poses a grave threat to his mental health, which has already suffered from his previous traumatic experiences in prison.   He contends that he has experienced a deprivation of sensory, social, and intellectual stimuli, which has caused him to suffer stress and depression.

**B.    Deliberate Indifference to Medical and Mental Health**

Johnson contends that the defendants have been deliberately indifferent to his serious medical and mental health needs.   In addition to his allegations that his current confinement harms his mental well being, Johnson also cites his alleged history of sexual abuse at the hands of other inmates.  (Docket Entry No. 4, p. 7)  He contends that his isolated confinement exacerbates his condition and that he experiences hallucinations, both auditory and visual.  Id.

Johnson alleges that he has required treatment from various agencies who administered psychoactive drugs including:  Seroquel (a bipolar drug), Depakote (used for seizures or manic episodes), and Zoloft.  (Docket Entry No. 1, p. 7)  Johnson asserts that he was completely sane when he was transferred to TDCJ from the New Mexico prison system but that he has lost all grip on reality as he

-4-

languishes in total isolation suffering from paranoia, suicidal thoughts, and gruesome nightmares.  (Docket Entry No. 18, p. 12)

Johnson complains that the defendants have been deliberately indifferent to his condition because they have failed to place him in a psychiatric facility or monitor his condition.  Id.  He contends that they have subjective knowledge of his condition and vulnerabilities because they are aware of his history of abuse and prior diagnoses of mental difficulties.  Id. at 13.  He complains that the lack of care along with his isolated confinement may result in serious injury or even death.  Id.

C.   **Failure to Protect**

Johnson alleges that he is at high risk of being assaulted if he is placed in general population in the TDCJ system.  (Docket Entry No. 18, p. 8)  He alleges that there are many gang members who seek retribution because Johnson has been labeled a snitch and that he lives in constant fear of what may befall him.  Id. at 9.  He contends that Livingston and Thaler were aware of this problem when Johnson was returned from New Mexico.  Id. at 8.  Johnson argues that his continued placement in TDCJ violates his right under the Eighth Amendment because there is no way that he can be safely integrated into the system, and he has been denied a basic necessity that violates all contemporary standards of decency.  Id. at 9.

D.   **Retaliation**

Johnson contends that his removal from NMCD was retaliatory and alleges that his return to the Texas prison system has placed

him at substantial risk of physical and sexual assault.  He also claims that he lives in constant fear that prison officials will follow through with their threats to have him killed for seeking relief through administrative and legal channels.  (Docket Entry No. 4, p. 5)  He alleges that he was safely housed in the NMCD general population but that Livingston and Thaler transferred him back to TDCJ in retaliation for filing grievances.  (Docket Entry No. 18, p. 9)  He further alleges that Livingston and Thaler, along with Herrera, continue to retaliate against him knowing that he is in danger while he remains in the TDCJ system after filing complaints about the conditions there.  Id. at 9-10.  Johnson reiterates his allegations about the deleterious affects of isolation.  Id. at 10.  He contends that the officials are aware of his history of physical and mental abuse and have retaliated by placing him in isolated confinement, which he claims is far harsher than placing him in the general prison population.  Id.

Johnson further alleges that Livingston, Thaler, and Herrera have continued to retaliate against him by allowing prison officials to tamper with his food, destroy his cell, and confiscate his legal work in order to prevent him from filing further grievances.  Id. He complains that the defendants have interfered with his right of access to the grievance process by denying him protection and contact with someone with whom he can file a protest concerning the officials' misconduct.  (Docket Entry No. 18, pp. 11-12)

Johnson alleges that the defendants' acts and omissions have caused him to suffer "physical injuries, intense degradation and humiliation, excruciating emotional pain, and lasting psychic trauma." Id. at 12. He seeks declaratory and injunctive relief. Johnson specifically requests an order transferring him to another state's correctional system or the federal prison system to remain as long as he is scheduled to remain in TDCJ custody. Id. at 15. He also requests a transfer from solitary confinement to a psychiatric facility. In addition, Johnson requests that he be offered appropriate medical and psychiatric treatment and that the court retain jurisdiction over the defendants until the court is satisfied that the defendants have ceased their unlawful practices. Id.

### III.  The Defendants' Response

In their well briefed and thoroughly supported motion for summary judgment, the defendants contend that the court should deny Johnson's request for relief because:

1. With the exception of his conditions of confinement claim, Johnson has not exhausted the required administrative remedies because he has failed to complete the TDCJ grievance process alleging that Thaler, Livingston, Herrera, or Linthicum violated his rights by denying him access to health and psychiatric care, being deliberately indifferent to his need for safety or retaliated against him.

2. Johnson's housing in Protective Custody does not violate constitutional minimums because he was removed from general population to protect him from predators and gang members who want to use him as a sex slave.

3.   The defendants have not been deliberately
     indifferent to Johnson's health and safety.

4.   Johnson is not entitled to a permanent injunction
     because he fails to show that injunctive relief is
     appropriate under the governing legal standards or
     the restrictions found in the PLRA.

The defendants present the following evidence in support of

their arguments:

| | |
|---|---|
| **App. 1:** | TDCJ Offender Commitment Data for Roderick Keith Johnson, TDCJ #1455959; |
| **App. 2-3:** | June 17, 2011, Correspondence from the State of New Mexico Corrections Department; |
| **App. 4-24:** | Summary of Johnson's Step 1 and Step 2 Grievances; |
| **App. 25-119:** | Relevant portions of Johnson's grievance records, with business records affidavit; |
| **App. 120-123:** | Affidavit of Warden Robert Herrera; |
| **App. 124-210:** | Relevant portions of Johnson's TDCJ Classification files, with business records affidavit; |
| **App. 211-233:** | Relevant portions of Johnson's Life Endangerment Investigations file for the period of 8/09/11 to 01/28/13, with business records affidavit; |
| **App. 234-264:** | TDCJ's Administrative Segregation Plan, dated March 2012; |
| **App. 265-431:** | Relevant portions of Johnson's medical and psychiatric records, with business records affidavit; |
| **App. 432-535:** | TDCJ's Classification Plan, dated 2003; and |
| **App. 536-537:** | Affidavit of Lannette Linthicum, M.D. |

Attachments to Docket Entry No. 41.

-8-

The evidence is summarized in the following narrative:

## A.   Johnson's Grievances

Johnson has filed a multitude of TDCJ administrative grievances since his return from New Mexico.  See App. 26-119.  His first Step 1 grievance (#2011215738) was filed within a few days of his arrival at Pack I on August 11, 2011.  In that grievance he complained that an official denied him access to his legal materials.  (App. 26)  Johnson alleged that he had an active case and needed his materials to meet his deadlines.  The administration response (App. 27) stated that he had been provided additional storage space and that his materials were returned to him.  Johnson then filed a Step 2 grievance (App. 30) complaining that legal materials had not been returned.  The response (App. 31) stated that the material confiscated was material that had been sent to him while he was in New Mexico and belonged to TDCJ.  Johnson was advised that he could request the material from the Pack Unit law library.

Johnson filed a Step 1 grievance (#2011221544) on August 22, 2011, complaining that TDCJ officers were retaliating against him for using the grievance process by denying him access to his legal materials and medications.  (App. 32)  The response (App. 33) stated that an investigation showed that Johnson had not been denied medications and medical care and that he had access to his legal materials.

Johnson filed a Step 1 grievance (#2012006370) on September 12, 2011, claiming that his allegations of assault have led to repeated instances of retaliation resulting in denial of medications. (App. 40) The response (App. 41) stated that rounds are conducted daily for patients in segregation. Although a dosage of Citalopram had been missed, Johnson was routinely seen by medical personnel. Johnson then filed a Step 2 grievance (App. 42) complaining that he was suffering acute psychological problems including paranoia and hallucinations. The response (App. 43) stated that his complaint about medical care could not be addressed because Johnson had failed to take correct measures to informally resolve the issue, and that there was also no evidence to support his allegation of retaliation.

On September 12, 2011, Johnson filed a Step 1 grievance (#2012006394) against the State Classification Committee alleging that his move from New Mexico was retaliatory and that his placement in Administrative Segregation (Ad Seg) deprives him of access to drug and alcohol programs and educational programs, which has affected his psychological well-being. (App. 44) The response (App. 45) stated that the State Classification made the determination that Johnson needed to be in protective custody and that the unit administration had no authority to override the decision. The response also stated that Johnson's medical concerns had been addressed previously. Johnson filed a Step 2 grievance (App. 46) stating that he had not been allowed to provide information about

-10-

how his assignment was affecting him physically, emotionally, and psychologically. The response (App. 47) stated that matter had already been addressed appropriately and that no further action was necessary.

Johnson filed another Step 1 grievance regarding his legal materials (#2012022991) on October 11, 2011. (App. 48) This time he alleged that his material had been confiscated and destroyed. The response (App. 49) stated that Johnson had requested disposition of certain items and that the remaining property that was permitted had been returned to him. In his Step 2 grievance (App. 50) Johnson claimed that his legal materials had not been returned to him nor had they been stored. The response (App. 51) stated that all materials that had not been provided by TDCJ's Access to Courts, Counsel and Public Official's Office had been returned to him. The response further stated that the case law in question was available through Access to Courts.

On October 19, 2011, Johnson filed a Step 1 grievance (#201229142) complaining that the Law Library Supervisor and another officer harassed him and confiscated his legal materials in retaliation for filing grievances. (App. 52) He also alleged that they threatened him with a cell shakedown. The response (App. 53) stated that an investigation had been conducted, and the law library staff explained what material was not kept there and why. It was also determined that there was no evidence to sustain Johnson's allegation that the staff had said anything inappropriate

-11-

to him.  Johnson's Step 2 grievance (App. 54) alleged that the
legal material was held for over two months.  The response
(App. 55) stated that a thorough investigation revealed no evidence
to support Johnson's allegations of threats or staff misconduct.

On October 23, 2011, Johnson filed a Step 1 grievance
(#2012031828) in which he claimed that he was suffering from Post
Trauma Stress Disorder (PTSD), bipolar disorder, and depression.
He further alleged that the mental health worker who treated him
threatened him and accused him of wanting to be released from Ad
Seg so he could have sex with other male inmates.  (App. 56)  The
response (App. 57) advised Johnson of his right to refuse
treatment.  Johnson's Step 2 grievance (App. 58) disputed the
response by stating that he did not refuse treatment or services
and that the worker harassed him.  The response (App. 59) concluded
that although Johnson had complained that the worker was
unprofessional during the encounter, there was no evidence in
support of Johnson's complaint.  Moreover, Johnson had failed to
make a correct attempt to informally resolve his complaint.

Johnson filed a Step 1 grievance (#2012036379) on October 30,
2011, complaining that a guard had threatened to leave his cell
unlocked so that he would be vulnerable to assault.  (App. 60)  The
grievance was denied (App. 61) because there was no evidence to
sustain Johnson's allegation.  Johnson filed a Step 2 grievance
(App. 62) alleging that guards were intimidating him in retaliation
for his testimony about the sexual abuse that resulted in his

-12-

transfer to New Mexico.  This claim was also denied (App. 63) for lack of evidence.

Johnson filed a Step 1 grievance (#2012049026) complaining that his placement in Ad Seg inhibits his right of access to the grievance process.  (App. 64)  He also complained that a grievance coordinator failed to explain why a prior grievance had been denied.  Id.  The response (App. 65) stated that an investigation had been made.  It also explained that the grievance department has specific submission guidelines and that grievances filed outside of that scope are screened.  The response also stated that there was no evidence to sustain Johnson's allegations.  Johnson filed a Step 2 grievance (App. 66) complaining that the denials of two prior grievances were improper and ignored facts establishing TDCJ's unconstitutional conduct, specifically his placement in Ad Seg.  The grievance was denied (App. 67) because there was no evidence of staff misconduct.

Johnson filed a Step 1 grievance (#2012064974) complaining that he was being threatened and harassed for filing grievances, which inhibits his access to the grievance system.  (App. 68)  He also complained that TDCJ officials were improperly dismissing his grievances.  The response (App. 69) stated that an investigation had been conducted and that it was found that Johnson had previously grieved the issue.  Moreover, there was no evidence that staff had addressed the issue incorrectly.  Johnson filed a Step 2 grievance (App. 70) complaining that his access to the grievance

-13-

procedure was inhibited by threats and arbitrary denials of his claims.  The response (App. 71) stated that there was no evidence of staff misconduct and that the complained of grievances are under review regarding his medications and hallucinations issues.

Johnson filed a Step 1 grievance (#2012074987) claiming that he needed a daily dosage of 900 mg of Seroquel, 200 mg of Zoloft and 2000 mg of Depakote but that he was only prescribed 20 mg of Citalopram (an antidepressant).  (App. 72)  The response (App. 73) stated that no further action was necessary because Johnson had been seen by a doctor who had prescribed Zoloft and that he was scheduled for a visit with a psychiatrist for an individual treatment plan.  In his Step 2 grievance (App. 74), Johnson complained of low dosages that did not address his mental problems and that the medical treatment at Pack I was inadequate.  The response (App. 75) stated that there was no evidence to support Johnson's complaint that he was being denied adequate medical care.  There was also a finding that Johnson had failed to informally resolve the problem.

Johnson filed a Step 1 grievance (#2012085947) on January 18, 2012, asserting that his assignment in Ad Seg violates his right under the Eighth Amendment.  (App. 76)  He also complained that the assignment negatively affects his ability to accrue good time or seek a classification promotion.  The response (App. 77) stated that Johnson had been seen regarding the Mental Health Manual Policy.  It also informed him that he needed to send an I-60 to

-14-

State Classifications in Huntsville if he wanted a release from
Protective Custody.  Johnson's Step 2 grievance (App. 78) reiter-
ated his complaint that his isolation exacerbated his mental
condition in violation of the Eighth Amendment.  The response
(App. 79) denied the grievance stating that his complaint had been
reviewed and that the issues had already been addressed.  There was
also a determination that Johnson had failed to informally resolve
the problem.

On March 7, 2012, Johnson filed another Step 1 grievance
(#2012118448) alleging that officials had threatened and harassed
him for filing grievances.  (App. 79)  He also complained that his
living conditions restricted his right to practice his religion and
to access educational/vocational workshops.  (App. 80)  The
response (App. 81) stated that an investigation had been made and
that no evidence had been found to warrant a change in Johnson's
housing assignment.  Johnson filed a Step 2 grievance (App. 82)
alleging that he was placed in "isolation confinement" in
retaliation for filing grievances.  The grievance was denied
(App. 83) based on the absence of evidence of staff misconduct.

On April 1, 2012, Johnson filed a Step 1 grievance
(#2012133031) complaining that health officials Dr. Abke and
Dr. Limsiaco determined that he did not suffer from any mental
disorder based on Ms. Bookman's cursory examination.  (App. 84)
The response (App. 85) stated that Dr. Limsiaco saw Johnson on
April 4, 2012, and that he had been prescribed Sertraline and that

-15-

no further action was needed. Johnson filed a Step 2 grievance (App. 86) complaining that TDCJ's mental health services inadequately treated his maladies. The response (App. 87) indicated that Johnson had been seen and prescribed medications. It also stated that Johnson was routinely monitored and that there were no Sick Call requests indicating that he was having trouble with the prescribed medications.

Johnson filed a Step 1 grievance (#2012139831) on April 11, 2012, complaining that a guard named Garcia had threatened Johnson and made him take a cold shower. (App. 88) Although assured that the threats would be stopped, Johnson claimed that they continued. The grievance was denied (App. 89) based on no finding of any evidence to support Johnson's allegations. Johnson filed a Step 2 grievance (App. 90) complaining that TDCJ unconstitutionally accepted Garcia's word over his own. That grievance was also denied (App. 91) for lack of evidence.

Johnson filed another Step 1 grievance against Garcia (#2012140841) on April 12, 2012, alleging that Garcia physically backed him against a shower wall and threatened him. (App. 92) The grievance was denied (App. 93) for lack of evidence. Johnson's Step 2 grievance (App. 94) was also denied (App. 95) because there was no evidence to support the claim.

Johnson filed a third Step 1 grievance against Garcia (#2012142492) on April 15, 2012, alleging that Garcia searched his cell and confiscated a highlighter and post-it pad in retaliation

for the grievances Johnson had filed.  (App. 96)  The grievance was denied (App. 97) because the confiscated items were contraband and because the search was legal.  Johnson filed a Step 2 grievance (App. 98) appealing the decision.  The grievance was denied (App. 99) based on a finding that Johnson's cell had been searched appropriately and that there was no evidence of retaliation.

Johnson filed a Step 1 grievance (#2012146588) on April 21, 2012, alleging that Warden Herrera, Ad Seg officials, and unit security supervisors allowed Garcia to continue to threaten, intimidate, and harass Johnson.  (App. 100)  The grievance was denied (App. 101) for lack of evidence.  Johnson filed a Step 2 grievance (App. 102) appealing the denial and alleging that he had been subjected to assaults.  The grievance was denied (App. 103) because there was no evidence that Garcia had threatened to physically harm Johnson.

Johnson filed a Step 1 grievance (#2012148265) on April 24, 2012, challenging a disciplinary action stemming from a contraband charge filed against him by Garcia.  (App. 104)  The grievance was denied and the disciplinary action upheld (App. 105) based on a finding that there were no procedural errors and there was sufficient evidence to support a guilty finding.  Johnson's Step 2 grievance (App. 106) was also denied (App. 107) after it was determined that all due process requirements had been met and that the punishment assessed was within the agency guidelines.

On July 15, 2012, Johnson again filed a Step 1 grievance (#2012197813) asserting various mental disorders, which have been aggravated by his Ad Seg assignment.   (App. 108)   He also complained that health care and mental health providers refused to provide adequate treatment and that no effort had been made to change his housing conditions.  The response (App. 109) stated that Johnson had been given an initial assessment within 30 days of arriving at the Pack I Unit and that he was reevaluated every 90 days thereafter.   It was concluded that no further action was necessary because Johnson was being treated by a psychiatrist. Johnson filed a Step 2 grievance (App. 110) complaining that TDCJ was inadequately treating his mental illness.   The grievance was denied (App. 111) based on a finding that Johnson had been monitored regularly and that there had been no sick call requests (SCR) from Johnson since February of 2012.

Johnson filed another Step 1 grievance (#2012202925) on July 23, 2012, again complaining about the living conditions in Ad Seg.  (App. 112)   He complained that SCC officials were torturing him because he was branded as a snitch.   The grievance was denied (App. 113) because the unit authorities did not have the authority to release Johnson from protective custody.   Johnson appealed his claims against the SCC officials in a Step 2 grievance (App. 114) alleging that prison officials continued to assault him, threaten him, tamper with his mail, steal his paper work, and impede his

access to the grievance process under the guise of protection.  The grievance was denied (App. 115) for lack of evidence.

Johnson filed a Step 1 grievance (#2012209177) on August 3, 2012, once again complaining about his living conditions stating, "In the past they have used rape and now they are using extreme social isolation, racism, sexual discrimination, and physical brutality and still [refuse] to provide adequate medical care." The response (App. 117) denied the grievance and noted that Johnson had previously grieved this issue.  It also observed that the SCC had interviewed Johnson and refused his request for release into general population and that Johnson's health concerns were best addressed by the medical department.  Johnson once again filed a Step 2 grievance (App. 118) complaining that officials continued to keep him in "solitary confinement," which inflicted physical, emotional, and psychological harm.  The grievance was denied (App. 119) with the notation that the matter had already been addressed.

**B.    Johnson's Housing Conditions and Need for Protection**

Contrary to Johnson's allegations, he is not being housed for punitive reasons.  See Affidavit of Warden Herrera, App. 120-123. Instead, he has been assigned to Protective Custody to separate him from the general population to maintain safety, security, and order.  Id. at 120.  Johnson asserts in his pleadings that he has been subjected to assault and sexual abuse by gang members because

of his sexual orientation and his reputation as an informer. Consequently, he has been placed in Protective Custody.

Pursuant to TDCJ policy, prison inmates who need the highest degree of protection due to threats of harm are placed in a controlled environment in order to provide for their safety. (App. 120)  These inmates were assigned to single cells and are not recreated, showered, or placed in proximity to other inmates regardless of classification or designation.  Id. at 121. Additional staff are assigned to escort Protective Custody inmates whenever they leave a secured area.

Inmates are typically placed in Protective Custody after reporting that they are in danger from other inmates.  (App. 121) Protective Custody differs from solitary confinement because it is not punitive in nature.  Id.  Inmates who have been found guilty of disciplinary infractions are placed in solitary confinement where they are subject to property restrictions where they are only allowed to bring their toiletry items, religious items, and legal materials. In contrast, inmates in Protective Custody are allowed to keep their personal property, which can include commissary items, books, games, and personal clothing purchased from approved vendors.

Johnson's cell is 70" x 126" and contains a bed with a mattress, a sink, a toilet, a desk with a seat, and storage under his bed for clothing and personal items.  (App. 121)  There is a window on the door of the cell which looks out on the housing area.

-20-

There is also an 11-inch, color, flat-screen television with 17 channels, which Johnson can watch at any time.  He may also listen to the radio.  Id.  Johnson also has access to the unit library and may check out materials from the law library as well as the Chapel library.

Contrary to Johnson's allegations, he does have daily contact with other persons.  (App. 121)  Health care workers conduct medical rounds with inmates in Protective Custody at least twice daily.  Id.  In addition, medical technicians deliver prescribed medications two or three times a day.  Psychiatric service providers also make routine rounds through the Protective Custody area.  Inmates in Protective Custody also have access to the unit chaplain and religious volunteers.  In addition, they may seek counseling for alcohol and drug dependency at any time.  Id.  Although by necessity Johnson cannot have physical contact with other inmates, his cell is situated so that he may speak with other offenders who are housed in Protective Custody.  (App. 122)  He also has daily contact with TDCJ staff.  Id.

Johnson is also allowed to receive correspondence from friends and relatives on his approved correspondence list.  Id.  In addition, he can receive periodicals and newspapers from approved vendors, and he can take correspondence courses from the Wyndham Independent School District.  Id.

Johnson was placed in Protective Custody because he made a life endangerment claim.  Id. at 123.  His allegations were

-21-

reviewed by either an Administrative Segregation Committee (ASC) or a Unit Classification Committee.  Id.  His custodial status and housing is reviewed every 30 days by an ASC and every six months by the SCC.  The warden by himself cannot change the custodial classification.  (App. 122)  The ASC must make the recommendation, and the SCC is the final approving authority.  Id.

## C.   Johnson's Access to Medical and Psychiatric Care

Johnson has been diagnosed as having PTSD for which he has been prescribed 150 mg Sertraline (Zoloft), which is used to treat depression.  (App. 311-312)  He has also been prescribed Amlodipine (high blood pressure), hydrochlorothiazide (edema), and aspirin. Id. at 311.  Johnson has been previously diagnosed with hypertension and a history of polysubstance dependence.  Id.  However, he has not been diagnosed with bipolar disorder, schizo-affective disorder or major manic depression.  Joyce Bookman, a mental health care provider, saw Johnson on December 5, 2012, and described him as "clean and well groomed, dressed appropriately."  (App. 311) She also noted that he was oriented and cooperative.  He exhibited no bizarre behavior and was not experiencing any hallucinations. Bookman noted that Johnson's thought processes were logical and goal oriented and that his main concern was finding a way to get himself out of Protective Custody status.  Id.

As noted above, health care workers routinely visit inmates housed in the Protective Custody area and are there on a daily

-22-

basis.  (App. 121-122)  The TDCJ Managed Care Solitary/Prehearing
Flow Sheet reflects that health care workers visited with Johnson
every day from August 10, 2011, through January 11, 2013.  (See
App. 393-411.)  The records reflect that Johnson voiced no
complaints during the visits and that his health status was
satisfactory.  Id.  Pursuant to the TDCJ Classification Plan, the
(University of Texas Medical Branch) UTMB Psychiatric Department
evaluates Johnson's mental health every 90 days.  (App. 311-312,
313-319, 325-327, 328-330)  Johnson is also subject to a physical
examination each time he is reviewed by the Administrative
Segregation Committee.  See "Other Special Conditions: Physical by
Howard."  (App. 155, 157, 162, 165, 172, 174, 179, 183, 197, 200,
204, 206, 210)

The records indicate that Johnson is aware of how to access
medical and psychiatric care and has done so successfully in the
past.  (See App. 311, 392.)  Johnson reported observing blood in
his stool on September 23, 2011.  Id. at 392.  A sick call exam
revealed a small hemorrhoid with no evidence of thrombosis.
(App. 280)  The records also reflect ongoing treatment for
hypertension.  (App. 266-272)  There is also an entry to make a
determination as to whether Johnson was receiving medications for
mental health.  (App. 281)  There is no record of Johnson not
receiving medication for an extended time or any indication that
Johnson suffered from any untreated acute mental illness.

-23-

Health care workers at the TDCJ units are employees of UTMB and are not employees of TDCJ or its health services division. (App. 537 (Linthicum Affidavit))  Consequently, the TDCJ administration is not responsible for the daily medical operations.

## D.    Retaliation - Motion to Dismiss

In a separate Motion to Dismiss (Docket Entry No. 24), the defendants argue that Johnson has failed to assert facts which show that they were personally involved in the alleged deprivations. They also contend that Johnson's claims of retaliation are not based on facts or a chronology of events from which retaliation may be inferred.

## IV.   Legal Standards

## A.    Rule 12(b)(6) Motion to Dismiss

Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor" and should be granted only if it is evident that the plaintiff cannot prove any set of facts entitling him to relief. Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011) (citations omitted).  In determining whether the plaintiff has stated a claim upon which relief can be granted, a reviewing court must accept the well-pleaded facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiff.  Id. Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 92 S. Ct. 594, 596

-24-

(1972); Propes v. Quarterman, 573 F.3d 225, 228 (5th Cir. 2009).
Nevertheless, a plaintiff "must plead specific facts, not mere
conclusional allegations, to avoid dismissal for failure to state
a claim." Kane Enters. v. MacGregor (USA), Inc., 322 F.3d 371, 374
(5th Cir. 2003), citing Collins v. Morgan Stanley Dean Witter, 224
F.3d 496, 498 (5th Cir. 2000).  Therefore, a reviewing court must
determine whether the complaint provides "enough facts to state a
claim to relief that is plausible on its face." Bowlby v. City of
Aberdeen, Miss., 681 F.3d 215, 219 (5th Cir. 2012), quoting Bell
Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  A complaint
is insufficient if it merely contains "labels and conclusions," or
"a formulaic recitation of the elements of a cause of action." Id.

**B.  Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
any affidavits filed in support of the motion, show that there is
no genuine issue as to any material fact, and that the moving party
is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).
In deciding a motion for summary judgment, the court must determine
whether the pleadings and records indicate if there is a genuine
issue regarding any material fact and whether the moving party is
entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c);
Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986); Little v.
Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  When

-25-

determining whether a fact issue exists, the court views "'the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.'" In re Kinkade, 707 F.3d 546, 548 (5th Cir. 2013), quoting Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 412 (5th Cir. 2003). In doing so, the court cannot make any credibility determinations or weigh the evidence. Kevin M. Ehringer Enterprises, Inc. v. McData Services Corp., 646 F.3d 321, 325 (5th Cir. 2011).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. Kee v. City of Rowlett, Tex., 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden the movant must present evidence that shows that the non-movant cannot carry its burden of proof at trial. Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the burden shifts to the non-movant to present specific facts showing that there is a genuine issue for trial; if the non-movant fails to make any showing, summary judgment will be entered in favor of the movant. Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003).

The court construes the evidence such that the non-moving party is favored and does not weigh the evidence, assess its probative value, or resolve any factual disputes. Williams v. Time

-26-

Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996). Factual controversies will be decided in the non-movant's favor only when both sides have presented evidence showing that there is an actual controversy. Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 518 (5th Cir. 1998), citing Little, 37 F.3d at 1075. Mere conclusory allegations are insufficient to defeat summary judgment. Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010), citing Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. Burns, at 518, citing Little.

### V.  **Analysis**

Because this is a civil rights action, Johnson must (1) prove a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys, 675 F.3d 849, 854-855 (5th Cir. 2012), citing James v. Tex. Collin County, 535 F.3d 365, 373 (5th Cir. 2008). As a prisoner, Johnson has a right under the Constitution's Eighth Amendment not to be subjected to cruel or unusual punishment, which includes conditions that place him at unnecessary risk of harm. Whitley v. Albers, 106 S. Ct. 1078, 1084 (1986). However, in order to prevail Johnson must show that the defendants were aware of a risk of serious harm to him and

-27-

that they were deliberately indifferent to it.   See Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994).   He must also have adequately exhausted available prison remedies before seeking relief in court.   See 42 U.S.C. § 1997e.

## A.   Exhaustion of Administrative Remedies

Before a prisoner can present a conditions claim in federal court, he must first exhaust those prison administrative remedies that are available to him.  42 U.S.C. § 1997e.  This applies to all aspects of prison life.  Porter v. Nussle, 122 S. Ct. 983, 992 (2002).  The purpose of section 1997e(a) is to filter out baseless claims and to allow custodial officials to respond to legitimate complaints without burdening the courts.  Id. at 988.  See also Woodford v. Ngo, 126 S. Ct. 2378, 2388 (2006).  A prisoner does not comply with the exhaustion requirement by filing a grievance or appeal that is procedurally defective.  Kidd v. Livingston, 463 F. App'x 311, 313 (5th Cir. 2012).  Failure to exhaust is an affirmative defense in a prisoner civil rights suit, but prisoners are "not required to specifically plead or demonstrate exhaustion in their complaints."  Johnson v. Mississippi Department of Corrections, 244 F. App'x 554, 555 (5th Cir. 2007), citing Jones v. Bock, 127 S. Ct. 910, 921 (2007).

The TDCJ system has a two-step grievance procedure that must be completed in order to comply with section 1997e.  Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999).  If an inmate has a complaint,

-28-

he has 15 days from the date of the alleged infraction to file a Step 1 grievance with the Unit Grievance Investigator.  Id.  The inmate must then wait up to 40 days to receive a response.  If the response is not satisfactory, the inmate must then file a Step 2 grievance within 15 days and wait another 35 days for a response. Id.  See also Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) ("The Step 1 grievance, which must be filed within fifteen days of the  complained-of incident, is handled within the prisoner's facility.  After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level.").  To exhaust, a prisoner must pursue a grievance through both steps in compliance with all procedures.  Id., citing Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.  Powe, 177 F.3d at 394.

The defendants have presented Johnson's grievance records, which contain various complaints.  Defendants do not dispute that Johnson filed grievances regarding the conditions of his confinement.  However, the defendants contend that Johnson failed to exhaust the grievance system with regard to his claims that the defendants denied him access to health and psychiatric care and were deliberately indifferent to his need for protection.  They also argue that Johnson failed to assert that they retaliated against him.

A primary intent behind  the grievance system is to alert prison authorities to difficulties that occur in the system. Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004). A grievance is not intended to be a summons used to initiate an adversarial proceeding, but it must afford the officials with a fair opportunity to address the problem internally. Id.  Although this generally involves identification of those individuals who are responsible for the violations, "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Id. at 522.

The court has carefully reviewed the numerous grievances filed by Johnson. Although Johnson does not mention Thaler, Livingston, or Linthicum in any of his grievances, section 1997e does not require that an inmate 'name all defendants' when filing his grievance. Jones v. Bock, 127 S. Ct. 910, 922 (2007). While Johnson does not identify the named defendants in his grievances, he makes it clear that he alleges that he has been denied treatment for his serious medical and psychiatric needs in addition to his claims regarding his alleged placement in isolation. Johnson also filed grievances alleging retaliation. However, the court does not find that Johnson filed grievances that clearly asserted that he was denied protection from assault. Therefore, the claim regarding the alleged failure to protect is subject to dismissal without prejudice under 42 U.S.C. § 1997e(a).

**B.   Johnson's Housing and His Need for Protection**

The Constitution "does not mandate comfortable prisons" and only those deprivations that deny "the minimal civilized measure of life's necessities" violate the Eighth Amendment.   <u>Rhodes v. Chapman</u>, 101 S. Ct. 2392, 2400 (1981).  To the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."   <u>Id.</u> at 2399.  The defendants have shown that Johnson was assigned to protective custody and housed in a single cell to prevent inmates from assaulting him.   This decision is grounded upon the prison officials' duty to protect Johnson from violence at the hands of his fellow inmates.   <u>Longoria v. Texas</u>, 473 F.3d 586, 592 (5th Cir. 2006), <u>citing</u> <u>Farmer</u>, 114 S. Ct. at 1976-77.

Prison authorities are afforded wide discretion in determining where and under what restrictions inmates are to be housed. <u>Hernandez v. Velasquez</u>, 522 F.3d 556, 562 (5th Cir. 2008), <u>citing</u> <u>McCord v. Maggio</u>, 910 F.2d 1248, 1251 (5th Cir. 1990); <u>Wilkerson v. Stalder</u>, 329 F.3d 431, 436 (5th Cir. 2003).  An inmate's liberty interests are implicated only when the disciplinary measures taken against him inflict deprivations that are atypical and significant in relation to the ordinary incidents of prison life.   <u>Sandin v. Conner</u>, 115 S. Ct. 2293, 2300 (1995).  Placing an inmate in segregated confinement to protect him from others is not actionable.  <u>Hernandez</u>, at 563, <u>citing</u> <u>Wagner v. Hanks</u>, 128 F.3d 1173, 1176 (7th Cir. 1997).  It is an ordinary incident of prison

life that is to be expected of an inmate who has been targeted by either his past conduct or his reputation.  Id.  To hold otherwise would subject custodial officials to an almost impossible task of allowing potential victims the run of the prison while attempting to protect them from violent assault.  Therefore, Johnson cannot assert a deprivation of a cognizable liberty interest in being segregated from the general prison population while claiming that he is vulnerable to sexual abuse and gang-related activity. Hernandez, 522 F.3d at 564.

Apart from failing to demonstrate that the assignment is actionable, Johnson has not shown that the conditions of his confinement violate his constitutional rights.  Although by necessity Johnson does not have physical contact with other inmates, he can communicate with others both in and out of prison. The Supreme Court has recognized that inmates can be subjected to isolated conditions for significant time periods.  See Wilkinson v. Austin, 125 S. Ct. 2384, 2394-2395 (2005) (almost all human contact, including conversation, not permitted at Ohio's state "supermax" facility).  Johnson's conditions fall far short of those he has alleged in his complaint or those conditions described at Ohio's supermax facility.  See id.  Johnson may not be able to commune with other inmates like those in general population, but that is a necessary component of protecting him from inmates in the general population who wish to harm him.

There can be no guarantee that a prisoner will be protected from all harm.  Adames v. Perez, 331 F.3d 508, 512 (5th Cir. 2003) ("Prison officials are not, however, expected to prevent all inmate-on-inmate violence."), citing Farmer.  Johnson has persistently claimed that he is a victim of sexual abuse and a target for gang violence.  He has proven that he cannot function in the general prison populations of either the Texas or the New Mexico penal systems.  The preventive actions taken by TDCJ officials at the Pack Unit, as well as those in Huntsville, are reasonable and do not violate Johnson's rights under the Eighth Amendment.  See Newton v. Black, 133 F.3d 301, 307 (5th Cir. 1998).  Johnson's claims regarding his conditions of confinement will be dismissed.

**C.   Johnson's Transfer from New Mexico to Texas**

Johnson contends that he should be removed from TDCJ and be allowed to serve the remainder of his sentence in some other penal system.  The defendants have demonstrated that they previously made an effort to accommodate Johnson's needs and that the New Mexico Corrections Department experienced difficulties in housing him. (App. 002)  The correspondence form NMCD makes it clear that Johnson initiated the sexual activities or was at least a willing participant.  Id.  Regardless of whether another penal system would accept him, Johnson has no constitutional right to choose where he is assigned or how he is to be housed.  Olim v. Wakinekona, 103 S. Ct. 1741, 1748 (1983); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir.

-33-

1996); <u>Biliski v. Harborth</u>, 55 F.3d 160, 162 (5th Cir. 1995). The fact that life in one prison might be less comfortable or appealing than another has no bearing on whether a constitutional right is implicated.   <u>Meachum v. Fano</u>, 96 S. Ct. 2532, 2538 (1976). Johnson's placement in TDCJ is made pursuant to a Texas state court criminal judgment.   His assignment and classification is a matter left to the discretion of the TDCJ officials who are in a better position to determine where to place an inmate such as Johnson who presents unique and difficult challenges.   <u>Wilkerson v. Stalder</u>, 329 F.3d at 436, <u>citing</u> <u>McCord</u>, 910 F.2d at 1250, <u>citing</u> <u>Bell v. Wolfish</u>, 99 S. Ct. 1861 (1979). <u>See also</u> <u>Mayoral v. Sheahan</u>, 245 F.3d 934, 939 (7th Cir. 2001) (acknowledging pervasive presence of gangs and the burdens placed on prison officials in segregating members).   Johnson's claims regarding his housing and unit assignment will be dismissed.

## D.   Medical and Psychiatric Care

Johnson alleges that he has been denied adequate medical and psychiatric care.   As a prisoner of the TDCJ, Johnson has a right to basic treatment in response to his serious medical needs as well as his psychiatric needs. <u>Estelle</u>, 97 S. Ct. at 290 (1976); <u>Domino v. Texas Department of Criminal Justice</u>, 239 F.3d 752, 754 (5th Cir. 2001).   Prison officials violate that right if they engage in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle</u>, 97 S. Ct. at 292.

Prison officials are deliberately indifferent if they are (1) aware of facts from which an inference of an excessive risk to the plaintiff-inmate's health or safety could be drawn, and (2) they actually draw an inference that such potential for harm exists. Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998). A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006); see also Phillips v. Roane County, Tenn., 534 F.3d 531, 539-540 (6th Cir. 2008).

Johnson alleges that he suffers from numerous mental ailments and that his segregated confinement aggravates his condition. He further contends that the defendants have denied him adequate treatment and medication. The records submitted by the defendants demonstrate that Johnson is closely monitored and seen daily by a health care worker. Moreover, there was no indication that he was suffering from a serious psychotic disorder that went untreated. He was regularly given medication, Zoloft, to treat his PTSD condition. The defendants' records of treatment, analyses, and medications demonstrate that defendants were not deliberately indifferent to Johnson's condition. Gobert v. Caldwell, 463 F.3d at 346-347. See also Mendoza v. Lynaugh, 989 F.2d 191, 193-95 (5th Cir. 1993); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

The medical records refute Johnson's allegations of extreme psychotic disorders although they do acknowledge some mental difficulties that were treated with medication.  Moreover, at least one health care worker, Bookman, indicated that Johnson was clearly focused on getting out of protective custody, suggesting that some of his alleged behavior may have been directed toward that goal. (See App. 311.)   The records show that Johnson suffers from hypertension and that he has been treated and counseled on how to control it.  (App. 266-272)  The records demonstrate that Johnson's need for medical attention has been met.   Johnson's disagreement with the health care workers' findings and diagnoses does not support a finding that the defendants were deliberately indifferent to his serious health needs.  Sama v. Hannigan, 669 F.3d 585, 590-591 (5th Cir. 2012).  Johnson's claims of deliberate indifference to his medical and psychiatric needs will be dismissed.

**E.   Retaliation**

Johnson alleges that the defendants have retaliated against him for exercising his right of access to the courts and the TDCJ grievance process.  To assert a retaliation claim "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McFaul v. Valenzuela, 684 F.3d 564, 578 (5th Cir. 2012), citing

Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999).
Causation requires a showing that the complained of incident would
not have occurred [unless there was a retaliatory motive present.
Moles v. Lappin, F. App'x 501, 507 (10th Cir. 2012), citing
Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). See also
MacDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).

Johnson alleges that he was transferred from the New Mexico
prison system back to TDCJ in retaliation for filing grievances.
He does not provide any facts from which the court could infer that
the transfer was motivated by an intent to retaliate against him.
See Allen v. Thomas, 388 F.3d 147, 149 (5th Cir. 2004). The NMCD
correspondence presents a valid justification for Johnson's
transfer. (App. 002) Johnson's behavior in New Mexico showed that
he was more of a menace than a victim in the sexual exploitation
that was occurring in the penal system. Id. The NMCD letter shows
that there is no merit to Johnson's claim that his return to TDCJ
from New Mexico was in retaliation for exercising his right of
access to the courts and to the TDCJ grievance process.

The other retaliatory acts alleged by Johnson (food tampering,
harassment, cell searches, confiscations) are based on conclusory
allegations that are insufficient to support a retaliation claim.
See Shelton v. Lemons, 486 F. App'x 395, 397-398 (5th Cir. 2012),
citing Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).
Moreover, Johnson has not shown that the alleged retaliatory acts
have had any effect on his resolve to seek relief in the courts or

through the prison administrative process.  The Fifth Circuit has explained that "[t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights."  Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006), citing Crawford-El v. Britton, 118 S. Ct. 1584, 1592 n.10 (1998).  Given the uninterrupted stream of grievances that poured forth from Johnson's cell (App. 25-119), it is difficult to perceive how any of the alleged retaliatory acts prevented Johnson from filing grievances or seeking relief.  Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988).  Johnson's claims of retaliation shall be dismissed.

**F.   No Showing of Personal Involvement or Policy**

In addition to demonstrating no constitutional violation, the defendants have also shown that they were not personally involved in the acts and omissions alleged by Johnson.  In a suit brought under 42  U.S.C. § 1983 the plaintiff must usually show that the "defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."  James, 535 F.3d at 373, citing Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999).  Supervisory officials cannot be held to be personally liable for their subordinate's actions if they were not personally involved in the alleged wrongdoing.  Id.

Johnson seeks injunctive relief and may sue the defendants in their official capacities without violating the Eleventh Amendment.

Meza v. Livingston, 607 F.3d 392, 412 (5th Cir. 2010), citing
Ex parte Young, 28 S. Ct. 441 (1908).  However, a suit against the
defendants in their official capacities must be supported by a
showing that there was a policy or custom behind the alleged
deprivations.  See Spiller v. City of Texas City, 130 F.3d 162, 167
(5th Cir. 1997).  Allegations of isolated instances of deprivations
alone do not establish liability of the policy maker.  City of
Oklahoma City v. Tuttle, 105 S. Ct. 2427, 2436 (1985); Bigford v.
Taylor, 834 F.2d 1213, 1220 (5th Cir. 1988).  Johnson has failed to
establish or allege any facts that would demonstrate the existence
of a policy that violates his constitutional rights.

The defendants have demonstrated that there is no genuine
issue as to any material fact and that they are entitled to
judgment as a matter of law.  Therefore, the defendants' Motion for
Summary Judgment (Docket Entry No. 42) will be granted, and this
action will be dismissed under FED. R. CIV. P. 56.  To the extent
that the defendants have moved to dismiss Johnson's complaint
regarding his conclusory allegations of retaliation as well as his
failure to demonstrate personal involvement, that motion (Docket
Entry No. 24) shall also be granted.

## VI.   Johnson's Motions

Johnson has filed several motions to amend and supplement his
complaint.  He has requested that Dr. Linthicum be dismissed from
the lawsuit.  (Docket Entry No. 26)  He has also requested that
several new defendants be added.  The defendants have responded

that the requested amendments are futile.    The court agrees and
will deny Johnson's motions.    (Docket Entry Nos. 26, 36, and 37)

     Johnson has also moved for court-appointed counsel.  There is
no general right to counsel in civil rights proceedings.  McFaul v.
Valenzuela, 684 F.3d 564, 581 (5th Cir. 2012).  The motion (Docket
Entry No. 48) will be denied because there are no extraordinary
circumstances in this proceeding that would justify appointment of
counsel.  Id., citing Ulmer v. Chancellor, 691 F.2d 209, 212 (5th
Cir. 1982).

     Johnson's Motion to Deny Summary Judgment (Docket Entry
No. 49) will be denied for the reasons stated in this Memorandum
Opinion and Order.

### VII.  Conclusion

     The court **ORDERS** the following:

1.  The Defendants Livingston, Thaler, Herrera, and
    Linthicum's Motion to Dismiss for Failure to State
    a Claim (Docket Entry No. 24) and Motion for
    Summary Judgment (Docket Entry No. 42) are **GRANTED**.

2.  The civil rights Complaint (Docket Entry No. 1)
    filed by a TDCJ prisoner is **DISMISSED with
    prejudice**.

3.  Johnson's request to dismiss Dr. Linthicum as a
    defendant is **GRANTED**, but all other relief
    requested in his Motion for Leave to File an
    Amended Complaint (Docket Entry No. 26) is **DENIED**.

4.  All other motions (Docket Entry Nos. 36, 37, 48,
    and 49) are **DENIED**.

**SIGNED** at Houston, Texas, on this the 22nd day of July, 2013.


                              _____
                                       SIM LAKE
                              UNITED STATES DISTRICT JUDGE

                                   -40-